case that you get an additional request from the court, so I'm going to look at it about that. We're not sure what we're going to do yet. All right, thank you. Our next case is Gordon v. U.S. 17-1845. Mr. Nichols, and you reserve three minutes of time for rebuttal, correct? Okay, we're ready for you to proceed with it, Ken. I think what this case is about is whether the appellants in this case put forth a prima facie case. We feel certain that they did. These two female physicians were not paid at the same rate as their male counterparts in the emergency department. That is clear, and I cannot come up with a logical reason for that other than sex discrimination under the Equal Pay Act. Now, the Equal Pay Act, as was mentioned in the Rizzo case that just came out a few weeks ago, night circuit case, confirmed that the Brennan decision should be, it's a remedial statute, and it needs to be considered in these cases. Is there any evidence in the record to show that Dr. Alley's raise was because he was a man? Does an employer normally say, yes, I'm going to give this money, this raise, to this man because he's a man? You don't see that. It's just when employers make that statement, if that was the case, we didn't discriminate. Is there any evidence? I think the evidence is the women were historically paid lower wages than the men ER doctors. Are you looking to the comparators? Yes. I'm looking to Dr. Alley. You made the argument that he got the raise. He did. They didn't get the raise, and therefore, that suggests that there's some discrimination. Well, Dr. Alley started in, I believe, 2008. In 2009, he was provided an increase. Now, he was a probationary employee like my clients were probationary employees. There's no indication in the record that I could see that would indicate he should be upgraded in salary, but he was. The two female physicians were not. I think the prima facie case is, well, that was based on discrimination because we showed the comparator. Isn't the prima facie case based on paid discrimination, and then the case equal case as a whole is based on gender or sex discrimination? Yes. In your view, did the claims court apply the proper framework in reaching this decision? Well, I'd say no. That's why I'm here. Explain then to us the error. The error was we put forth evidence that the men were paid more than the women doing the same job. They're all ER physicians. They had the same types of duties, and yet you had this pay disparity there. I think it's the agencies that they need to show that under the Equal Pay Act analysis that they have to show one of those four affirmative defenses, and the burden is on them on those affirmative defenses. Let's assume for the moment that when it comes to the denial of a pay raise in 2010 was due to the executive order installing a pay freeze. The denial of the opportunity for a pay raise in 2010 was not due to gender and the government put forward a strong basis for the denial of those pay raises in 2010 because it was due to a gender neutral pay freeze across the board. Then as I understand your case, your case would then boil down to Dr. Ali who was hired in 2008 just like Dr. Gordon and Dr. Maxwell. Is there ever been a case where one data point in which one male employee was getting paid more than a female employee is enough to make a case for a violation of the Equal Pay Act? I would say yes. I think they've said, cases have said that one example is enough. What cases are those? I'd have to go back, but having one comparator has been sufficient in Equal Pay Act litigation. So if that's what you want to describe Dr. Ali as, as that one, then if we're left with one, that's sufficient under the EPA, but we think there's more than one. We had one doctor who even had less responsibility in the emergency room. He only handled the non-urgent patients, and yet he's making more. And then another one was claimed that he was a supervisor. Well, the supervisory status, if that's what you want to call it, did not occur until 2012, but yet they're trying to go back to justify their earlier pay discrepancies. So this case involves summary judgment, correct? Yes. You would have to show just one disparity in pay, or you could just show just one disparity in pay in order to show that there's a genuine issue up until fact. Yes, sir. Now let me ask you a question. Didn't the case of Yant just change all of this for you? Well, I think Rizzo questions whether Yant does that. I think in Yant you had groups within groups. You had nurse practitioners, and you had physician assistants, and both those groups had men and women in them, and I believe in our case... I guess what I'm getting to is in Yant, they took it a step further and said that to get beyond summary judgment, you had to just show more than disparity in pay. You had to show an actual intent to discriminate on the basis of sex. I think the proper framework for the EPA is for the agency or the employer. It's not like a Title VII where the burden shifts back and forth. It's equal pay. The burden is on the employer to show that they did not discriminate. The question is at what point does that burden shift? I think you're right that there's a burden shifting involved, but doesn't Yant change the point or the pivot point where that burden shifts? It makes it solely from disparity in pay and turns it into disparity in pay plus and intent to discriminate. I would question whether based on the Rizzo case, if the court should blindly follow Yant because that case dealt with comparison of groups of nurses and groups of physician assistants. We're just dealing with physicians in one department and it's easier to compare those. You're not mixing. Like in Yant, I think they had a national pay scale and regional pay scales. We're just dealing with what's going on in the emergency department at the Central Arkansas Veterans Healthcare System. We made the Prima Facie case. We rebutted enough of the facts for summary judgment. The court needs to accept our evidence as being true. I don't think they have in this particular case. One thing about this case is that Gordon and her husband, who is a comparator, worked there. What started this case is when they compared their paychecks and the husband was making, I think, about $14,000 more a year than she was. Now they've got a daughter. How can they explain to their daughter why daddy is making more money than mama for doing the same job? I think it's as simple as that. I think we put forth enough evidence to show pay disparity under the Equal Pay Act. The court and the agency failed to prove otherwise. The proof is on the agency in this particular case, not so much on us. We put forth enough evidence to show and our comparators were appropriate. Also, the chief employer, the supervisor, admitted that the duties and everything were the same. The chief of staff and the head of the department, they're both women, right? No. The chief of staff is Margie Scott and she is a woman. I think Dr. James Roche, who has passed away, was a male. Dr. Edith Fraley? Fraley was a supervisor at one point over the folks. The sad thing about it, she's female and all the doctors were making more than she was. She was supervising them. So that's how that came about. I think a while ago when I was talking about Yont, I said that Yont required an intent to discriminate, but actually just required to show discrimination, not an intent. What is the citation of the Rizzo case? Rizzo just came out a few weeks ago and I put in notice that we would be supplementing the record at oral argument. It is a court of appeals for the Ninth Circuit. It was April 12th, 2018. I have a Lexus site of 2018USAPP.Lexus8882. You're into your rebuttal time. Do you want to continue or do you want to save your time? I'll save my time. Okay. Thank you. Counselor Wisterkamp? Good morning and may it please the court. I thought I would just address some of the points that my opposing counsel made. The main thing here is that over a course of approximately four years of discovery, the plaintiffs actually took no depositions during that time period. And then in addition, their interrogatories directed no specific interrogatories towards any of the doctors. And then in addition, when it came to the summary judgment briefing, never actually identified comparators. And so the government, in our response, in our cross motion, went through and explained why certain doctors were not comparators, such as the two gentlemen that were supervisors, where the plaintiffs had conceded at their supervisors. And so therefore, they were on a different pace bill. And then in addition... I thought the opposing counsel said, I believe it's Dr. Snodgrass, wasn't really a supervisor until 2012 and all of the real issues are 2009, 2010. That's what they alleged. But again, didn't actually take any depositions and try and point to, as I'm sure your honors are familiar with, the SF50s and some of the different things in it was a supervisor during that time period. And then in addition, when it comes to Dr. Gordon's husband, the reason why he made more when he was hired was because there was a different pay table that the VA was using. And importantly, at no time has the plaintiffs actually alleged that the actual VA pay schedule discriminates based on gender. And so he therefore, just by virtue of the fact that he was hired two years later, was hired at a different pay table. And that's the sole explanation for why he was making more money than his wife. One of the concerns I have is looking at the opinion of the Court of Federal Claims and that's whether the court actually applied the appropriate framework. Can you address that issue? I don't think I even saw the word prima facie in the opinion. Yes, I can, your honor. And so it's on page of the appendix. It's 17 of the appendix where the court said that we have not addressed the issue of comparators in depth because the decision in this case renders it moot. And so it does appear that the court, just for purposes of looking at the government's affirmative defense, maybe just presumed that the plaintiffs had met the prima facie case, however, did not actually analyze whether they had. And again, this court has no review. And by virtue of the fact that the appellants have made this an issue, the court should, of course, examine whether they have met their prima facie case. And then, at least when it comes to the rest of the framework, although I understand that reading this opinion, it's a little confusing as to what the court did. The court then did go on to. It does seem that the court also concedes the point that there is a showing of disparity in pay. At least they got that far. In the sense that the court did look at what the different allegations were, like, for instance, with Dr. Kaiser. And the court also examined Dr. Ali. And that's at page 19 of the record where the court, for instance, said that, again, the record does not show how this pay raise in 2009 came about. And kind of went through some different things that maybe it could have been that. Except, again, no deposition. Doesn't that raise a genuine issue? No, I don't believe so, Your Honor. Because when it comes to Dr. Ali, I think the big elephant in the room is, Your Honor, Judge Chen pointed out earlier, was the pay freeze. Where once that happened, no doctors. Well, there's that. I mean, the pay raise. But the showing was that Dr. Ali got paid more. In 2009. In 2009. But then in 2010, Dr. Maxwell was approved up to $212,000, except Dr. Scott, the chief of staff, was mandated to deny that. To put a finer point on it. Why? I mean, one could argue there was unequal treatment between the man, Dr. Ali, and the women, Drs. Gordon and Maxwell, because they were all hired in 2008 at the same salary. And then, for whatever reason, in 2009, Dr. Ali, but not Drs. Maxwell and Gordon, received the pay bump. And then, for whatever reason, the women doctors had to wait until 2010 to get in front of a pay panel. And then I agree. The pay freeze prevented the bump from happening in 2010. But why was it that the women doctors didn't get the same bump up in 2009 like Dr. Ali did? I think that's the question. That, maybe, is the elephant in the room. What's your response? My response to that is that there's no evidence in the record that he was subject to the same probationary period. And more importantly, as the trial court noted, he did have more professional achievements than the plaintiffs. For instance, he came from a level one trauma center. He was actually board certified in emergency. You have the court appears to be juggling facts and weighing out facts. Doesn't that, once the court starts doing that, doesn't that get you beyond some return? Not in this instance because, again, it is a genuine dispute of material facts. And so, what we have here is, well, he got a pay raise in 2009, but there's nothing in the record indicating that that was on the basis of gender discrimination. In 2009, he was being paid more. And then you have to get into the inquiry, why? Isn't the why the material fact? Well, but in this instance, there was no discovery on that question. And again, this was something where discovery lasted for about four years and there were no depositions taken. And then, in addition, when it comes to the testimony that opposing counsel referred to, that was actually before the EEOC, which similarly found that there was no violation of the Equal Pay Act because they hadn't violated it. And so, and again, Dr. Rash did pass away a couple of years ago and he was actually overseeing all of the primary care. Let's try to approach the question a little differently because I understand Yant, in order to make a Prima Fascia case, the plaintiff has to come forward and show that the pay differential between men and women is based on sex, right? That's what Yant says. Correct. Corning doesn't quite say it like that, but let's just assume for the moment Yant didn't exist. And so, all we had was Corning. And Corning step one for Prima Fascia just says, is there a pay differential between men and women? Well, I would say, Your Honor, that Corning actually, and this was mentioned in Yant, where this court noted in Corning that this case, however, is completely devoid of the historical discrimination at issue in Corning Glassworks. And so, again, I think even with Corning Glassworks, this case is devoid of any historical discrimination occurring between the two plaintiffs and the rest of the doctors in the emergency room. And again, the doctor that- I guess, but just stay with me in my hypothetical. We're in a pretend land. We're not in reality. Pretend land would be Corning says, just to meet your Prima Fascia case, all you have to do is prove that there's a pay difference between men and women. Let's just say, for sake of argument, that's what Corning says. I know you feel differently and that's fine. I guess the question here would be, under that pretend world, would Doctors Gordon and Maxwell have met their Prima Fascia case? Under that pretend world? Sure. Because of Dr. Ali? Well, if they were able to show comparators, but again, they didn't actually go through that exercise. But I want to know why you said, sure, in response to my hypothetical. Well, if they could show comparators, if they could do that, then yes, that could make a Prima Fascia case. Okay. Why isn't Dr. Ali alone a Prima Fascia case in this hypothetical context? Well, I guess he was hired as part of his hiring. He actually moved from Houston. And so, part of his pay was actually built in for moving and travel expenses. And so, that's another factor of that where he was different than the other two doctors because they came from other hospitals within Little Rock. Would that go maybe into step two, where the government then has the burden to come up with a rebuttal case for why Dr. Ali ultimately received that bump up in 2009 for a gender neutral basis? Yes, that could go into step two. Okay. So then, I guess getting back to my question, it would sound like you're saying that the plaintiffs in the hypothetical context would have in fact met their burden to make a Prima Fascia case. It's possible. And again- Because one data point is enough? Yes. And I also cannot cite to specific cases, but when it comes to the Equal Pay Act, a data point can be enough, Your Honor. But then again, that gets to the burden shifting where with the government, where we went exhaustively through and explained, and the trial court also held that the pay panels were not gender discrimination. And then the resume requirement was important because the pay panels varied from year to year. And as you can imagine at a VA large hospital, a doctor may not know everyone else, especially in different departments that they're reviewing. And when it came to the resume requirement, it actually supports our case where the plaintiffs noted, hey, look, I think it was Dr. Gordon, I have supervisory experience and I wasn't credited with that. And the trial court said, well, that's a good reason why the resumes, the hospital needed these in order to make sure that you were being compensated for your work. And then again- Isn't it a fact question as to whether resume was actually required? Um, as to with them meeting, um, when it- Dr. Lee received his, his race or without a submitting his resume. Well, we actually don't know that because that again, um, wasn't ever questioned and- This brings me to, to, to, to the next point. Once a promo foster case is made, the burden is shifted to the government to show no discrimination, correct? I mean, you, you seem to, you seem to have that place, that burden on, on, on, on the women to show that there is discrimination, but all they have to do at this point is to show there's a material fact that's in dispute. The burden shifts to you to show no discrimination. That's correct. And that's what the government did in this instance, where we explained that, um, again, uh, and these personnel files, none of the, to my, when I actually looked through all of them, um, it's my recollection that resumes were not even dated. And so as you can imagine, you submit a resume and it wasn't indicated when they were submitted. Um, but the, what we had here was our, our defense and the affirmative defense was that the VA pay bill, um, is applied gender neutrally. The pay panels met, um, it supports our case that Dr. Maxwell did receive a raise up to $212,000, which would have been more even than Dr. Kaiser. I think he was at 205, except it was, had to be denied because of the, um, federally mandated pay freeze. And then in addition, um, unfortunately Dr. Gordon's pay panel did not meet before that pay freeze. And so this is all, as the trial court noted, kind of an unfortunate coincidence of timing where, um, the pay panels, nor the plaintiffs could have known that this was happening or going to happen. Was there any evidence that Dr. Lee did not submit his, his, um, his resume, his CV? The, I'm sorry, is there, is there any evidence presented that he did not submit? No, there was not. No. Um, and again, when it came to, um, when it came to that pay freeze... If there was evidence, then would you say that there was, uh, some judgment was not appropriate? I'm sorry, again, I didn't follow you. If there was evidence submitted that Dr., uh, or there's evidence in the record were submitted that Dr. Lee did not submit his resume, with that question, there would be, because again, with the pay panels, the resumes were... And if you're arguing the absence of the information, that's the reason why summary judgment was, was appropriate. I'm asking you if they're assuming that there was evidence or that there was evidence, then, then we could say that summary judgment was not proper, correct? If there was evidence that he had not submitted a resume? Yes. Um... But Dr. Lee never did submit a resume. Uh, then maybe it would not have been appropriate, but here we don't have evidence either way. Um, and then in addition, um, when it came to the resumes, I think the trial court really focused on the resumes, um, for some reason, but the resumes, again, were kind of the precursor to a pay panel meeting, um, and may not have been required in all instances. Again, that the record doesn't reflect either way, but... Any evidence in the record to suggest that the requirement for resume was in any way gender based? No. Um, and, and the trial court actually held that the resume requirement, and these were at pages 18 through 19, uh, where the trial court, and I'll just quote here, more importantly, the requirement was not applied unevenly and it did not therefore have potential for gender discrimination. Um, and, and so, and again, the reason why is these pay panels, um, for every act, for every single year that the plaintiffs had pay panels, all of the doctors were different. And so, I mean, they just didn't know everybody at the hospital. Um, but then again, once that pay freeze happened, no emergency room doctors received any market pay increases. Um, and that's actually at, uh, uh, it can be found at page 72 of the record. Um, and then, and so that again was applied, um, gender. And I would also add too, in 2014, the pay freeze was, and I know I'm almost running out of time here, the pay freeze ended in December 2013. In February 2014... They got their bump ups. As soon as they could, and the hospital did that. So let's... Okay. I just wanted to ask a question about, um, Corning and Yant again. So Yant says, to make the prima facie, is the pay, was the pay differential based on sex? And I didn't see Corning say that last phrase in, in its opinion based on sex. So I guess, could you explain to me why Yant is, is consistent with, um, Corning as opposed to putting an additional burden and gloss on, um, what the plaintiff is required to do to make a prima facie case? Well, I think Your Honor, um, and respectfully this court, Yant is this court's opinion. No, I understand that. I'm just trying to make sure I understand Yant correctly. Um, I think you do understand... Fits with Corning. Yes. Yant did seem to add, um, and I know that Yant had said other courts have held that proof of discriminatory intent is not required to establish a prima facie case, but Yant did seem to add an extra level of, as this court, uh, held it, but it does require showing that discrimination based on sex exists or at one time existed. Um, and again, I don't really think this is the right vehicle of a case to, to look at Yant necessarily, because again, um, there, there were no comparators that were actually discussed at the time. And I realized Your Honor... Yant doesn't totally apply in this case. I mean, I don't really think it does. And I, cause I think more importantly, we explained all the, uh, the affirmative defenses. So you're, you're, you're out of time, but let me, let me bring you back to this, this one point. Look at appendix 43. This is a, uh, the compensation panel action. Yes. And under number four, down three quarters, it says board certifications, it says no CV. So isn't that evidence that there was, that Dr. Ali did not submit a CV? Um, as to what it could be, I am not sure. Okay. Well, but that's a question of fact, isn't it? That's, that's a question in dispute. That's a genuine issue, a material fact. Correct? And that's, I asked you a while ago, if I was able to show you that there was evidence that a CV was not submitted, whether that would mean that summary judgment would be improper. And you said, yes. But again, your Honor, I think when it came to the CV, the trial court really focused on that. And I don't really understand why, um, because that, that also stated, so I'm reading from number four. Because it was stated as a justification as to the difference in pay. Okay. So we're out of time. Let's go back and, and, um, hear from the other side. Thank you. Judge Chan, you, you, you've mentioned the pay freeze, but I think the wording of the pay freeze itself gave the agency the authority to, uh, take care of a potential sex discrimination, EPA violation, that they had the authority to increase the pay based upon that under the executive order. So I don't see the, uh, uh, the executive order as clearing the agency of this responsibility because the order itself gave them the authority to, uh, award a raise, especially in a case where, uh, you're going to take care of some litigation that's going on. But as I understand it, the hospital didn't give anybody any pay raises during the time of the pay freeze. Is that right? Well, uh, I can't remember the doctor's name, but one doctor did get, uh, uh, during that period of time, but it was, uh, argued that the, the process itself ran outside the, uh, uh, timeframe of the, of the EPA. So I guess it went ahead and, uh, and paid it. So, uh, uh, uh, I think that the agency did is that they had a notice that the pay freeze was coming and they implemented it before it was actually went into effect, uh, at least for, for my clients. Uh, the resumes, I was confused by the, uh, claims court decision. I couldn't, couldn't really follow it. Uh, it was, you know, I don't, don't want to be disrespectful, but it's almost like it was constructed out of the whole cloth where you read the whole thing and try to put the pieces together. What if the claims court was trying to say, there's no mandatory absolute requirement for a pay panel to have, um, uh, an employee's resume in front of it when it's trying to determine any pay raise, but it's absolutely reasonable for pay panels to make requests for resumes in order to have all the information available to it to make the most informed decision possible during a pay panel. We have a disputed fact over Dr. Gordon. Uh, she says she turned it in. They said they didn't get it. So, uh, uh, so summary judgment, in my view, would not be appropriate, uh, if that's a material fact that needs to be decided because the agent says they didn't get it. She says they, uh, they gave it to her or he, she gave it to him. So, uh, supervisors, I think they just throw that term around, but, uh, these doctors were, except maybe that Dr. Fraley that you mentioned earlier, were not supervisors. They were, in fact, some of them were members of the union and the union cannot have supervisors in their union. So I think they just use that word just to kind of bootstrap the, uh, the pay raises that they gave some of these folks. Uh, one supervisor, uh, he was not performing his physician duties. He was working the schedule out. Well, that's clerical work. That's not supervisory work, but yet they imply that this person is a supervisor and should be compensated at a higher rate because of those supervisory duties. Those were clerical duties, not supervisory duties. Okay. So do you want to conclude? Yes. Uh, just like for, for this court, uh, to, uh, uh, send this case back for failure to meet, uh, for the agency's failure to meet its burden, there's disputed, uh, material facts here and summary judgment was not appropriate. Thank you. All right. Thank you. We thank the party for the argument.